## Percival Steele, Appellant, v. George A. Lamb et al., Appellees.

## Gen. No. 18,738.

1. ATTORNEY AND CLIENT, § 150*—*when evidence shows want of good faith in serving statutory notice for lien.* On bill filed by an attorney to enforce a lien for attorney's fees under Hurd's R. S. 1912, ch. 82, ¶ 55, J. & A. ¶ 611, a decree dismissing the bill for want of equity on sustaining a plea alleging that complainant's notice for a lien was not served in good faith, but was served for the purpose of defrauding a creditor of the judgment creditor, *held* sustained by the evidence.

2. APPEAL AND ERROR, § 1165*—*when court may consider only questions parties see fit to present.* Where adult litigants are concerned and private rights, only, are involved, the practice considered proper is to decide such questions as they see fit to present.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed January 22, 1914.

HARVEY L. CAVENDER, for appellant.

F. W. BALCOMB, for appellees; CHARLES D. MC-GRATH, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

By this appeal it is sought to reverse a decree of the Circuit Court sustaining a plea to the bill of complaint and dismissing the bill for want of equity. The bill alleges that the complainant (appellant) is a lawyer, practicing in Chicago; that about May 1, 1909, he was retained by the defendant, Lamb, to collect certain claims against H. O. Tomlinson & Co.; that no definite amount was agreed on for attorney's fees, but it was understood that a reasonable fee should be paid to the

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

complainant for his services; that complainant brought suit in the Municipal Court for $60,000 on behalf of Lamb against Tomlinson & Co., and on July 15, 1909, a judgment in Lamb's favor for $7,164.21 was recovered, from which judgment an appeal was perfected, which was pending at the time the bill was filed; that the reasonable, customary and ordinary charge in Chicago for such services as were rendered by complainant in that suit was $4684.49, and that amount, it is claimed, is due and owing to the complainant from Lamb; that on June 10, 1909, complainant caused to be served upon Lamb and upon Tomlinson & Co. a written notice, stating that in pursuance of paragraph 55, chapter 82, of the Illinois statutes (J. & A. ¶ 611), he claimed an attorney's lien, in the sum of $7,500, for services rendered and disbursements made in said suit of *Lamb v. Tomlinson & Co.*, "upon all papers and claims of, and amounts due and to become due to, said plaintiff, George A. Lamb, in connection with said action." The prayer of the bill is that the court will "ascertain, adjudicate, and enforce" the complainant's alleged lien for attorney's fees. To this bill the defendant, Lamb, filed a plea, stating in substance that the notice described in the bill "was not served in good faith by said complainant for the purpose of complying with the statute in the said bill pleaded, or for the purpose of protecting said complainant's right to compensation for services rendered," but was served in pursuance of an arrangement between the complainant and defendant to "place beyond the reach of other creditors" of Lamb, and "to fraudulently cover up," any judgment that might be secured in the suit of Lamb against Tomlinson. The cause was then referred to a master in chancery to take testimony and report the same, "together with his conclusions thereon, on the issues raised by the special plea." The evidence heard before the master consisted chiefly of the testimony of the complainant and the defendant, Lamb. From their evidence it appears that during the

trial of the Tomlinson suit in the Municipal Court, and after complainant had spent considerable time and effort in preparing for the trial and in partly trying the case, a suit was brought against Lamb by one De-Buys for $10,000; that upon inquiry complainant learned that DeBuys held Lamb's notes for large sums which the latter was unable to pay; that complainant thereupon prepared a notice to be served upon Lamb and Tomlinson, claiming a lien to the amount of $5,000 upon the cause of action involved in the Tomlinson suit; that before this notice was served, however, there was a conference between complainant and Lamb at the office of complainant, at the conclusion of which, the complainant, with the consent of Lamb, altered the notice he had prepared, by increasing the amount of his claim, as therein stated, from $5,000 to $7,500, and in that form the notice was served upon Lamb and upon Tomlinson & Co. As to these facts there is no controversy. The only dispute is as to what was said at the conference in complainant's office. Only Steele and Lamb were present at that conference. Steele testified that when he produced the notice he had prepared and showed it to Lamb, the latter looked it over and said, "What is the objection to making the amount $7,500?" to which Steele replied, "So far as I am concerned there is no objection to making it $7,500," whereupon Steele called in his stenographer and had the notice rewritten as suggested by Lamb. Lamb testified that when the notice was produced, he told Steele that he was in an impoverished condition financially, and would be justified in going into bankruptcy, but that he wanted to escape that stigma; that he felt reasonably sure he would recover a judgment for $8,000 or $10,000 against Tomlinson & Co. in the pending suit, "and DeBuys will simply grab it;" whereupon Steele said that there was a better way than going into bankruptcy; that he (Steele) had prepared the papers claiming a lien for $5,000 against the Tomlinson claim; that Lamb said,

"Well, in that case why not make it $7,500; I suppose a lien of $7,500 would about cover it," to which Steele replied, "Very well, we will raise it." Upon this evidence, the master first found and reported that the notice was served in good faith so far as the claim for reasonable fees was concerned, and "to that extent" the notice was good. Upon exceptions filed to this report, the cause was re-referred to the master "to further report," whereupon the master submitted a further report in which he found and reported that the plea of fraud in giving the notice had not been proved, that the notice was good, and recommended that the plea be overruled. Upon exceptions filed to this report, the court took a different view of the evidence, and found that the plea was sustained by the proofs and held it sufficient, in fact and in law, to bar the complainant's suit.

The statute creating attorneys' liens and providing for the enforcement of the same (Hurd's St. 1912, Ch. 82, § 55,) J. & A. ¶ 611 gives to attorneys at law "a lien upon all claims, demands and causes of action * * * which may be placed in their hands by their clients for suit or collection * * * for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action: Provided, however, such attorneys shall serve notice in writing upon the party against whom their clients may have such suits, claims, or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." The statute further provides that the lien shall attach from the time of the service of such a notice.

Under this statute, no lien exists until the prescribed notice is served, and such notice must state "therein" the interest the attorney has in the suit or cause of

action. As originally prepared by Steele, the notice undoubtedly expressed his view of the amount of his interest in the cause of action against Tomlinson & Co. When he changed it, the notice stated that his interest therein was much greater than was the fact. Steele knew that this was so, and although he made the change at his client's request, yet, as an attorney, with knowledge of the facts regarding the DeBuys' suit, he must have known that Lamb's purpose in requesting such change to be made was to place the whole Tomlinson claim beyond the reach of DeBuys. No other reasonable explanation is offered by Steele or warranted by the evidence.

It is assumed in the briefs and arguments of counsel on both sides that if the notice was in fact thus changed by mutual consent for the purpose of hindering, delaying or defrauding DeBuys, then the notice was fraudulent and no rights can be based upon it in a court of equity. Whether this assumption is correct, necessarily and as a matter of law, we need not stop to inquire, for the reason that its correctness is not questioned in this case. In the recent case of *Heppes Co. v. City of Chicago*, 260 Ill. 506, the Court said: "Where adult litigants are concerned and private rights, only, are involved, the practice considered proper is to decide such questions as they see fit to present." In this case adult litigants are concerned and private rights, only, are involved. It also appears that both parties are trained in the law, and the only question they have seen fit to present is whether the finding and decree are supported by the evidence, upon the assumption above stated. This question, we think, must be answered in the affirmative, for the reasons given above, and the decree of the Circuit Court will therefore be affirmed.

*Affirmed.*