**Arthur B. Wright, Appellee, v. George T. Clark, Appellant.**

**Gen. No. 23,302.**

1. ATTORNEY AND CLIENT, § 105*—*when no recovery may be had for services in effecting compromise settlement.* Where an attorney retained by the widow and heirs of a testator to set aside the will or effect a settlement enters, without their knowledge, into an agreement with the attorney of one of the executors, whereby he receives 80 per cent of the fees allowed such attorney, he cannot recover for his services in effecting a compromise settlement.

2. ATTORNEY AND CLIENT, § 105*—*what is effect of acquiescence in misconduct of attorney on liability for services.* In an action by an attorney to recover for professional services rendered a client,

where the defense is the attorney's professional misconduct, it cannot be set up by the plaintiff that defendant had knowledge of and acquiesced in the misconduct.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed. Opinion filed October 15, 1918. *Certiorari* denied by Supreme Court (making opinion final).

SCOTT, BANCROFT, MARTIN & STEPHENS, for appellant; FRANK H. SCOTT, of counsel.

GREGORY, BURGES & McNAB, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This was an action in assumpsit brought by appellee to recover for professional services, predicated upon the following agreement pursuant to which the services were rendered:

"Copy of Agreement Sued On.

"We agree that the compensation for professional services performed by Arthur B. Wright in the matter of the contest of the will of Jonathan Clark, shall be the sum of $250 per month, together with $75 per month and $50 per month, respectively, for Mr. Cox and for typewriting, a total of $375 per month.

"After the case is set for trial, if any adjournment occurs after the case is prepared for trial, or any delay thereafter in the proceedings occurs, the amount to be paid monthly as above shall be reduced to a sum consistent with all the services performed, if a continuation of such payment each month would amount to a sum greater than a fair compensation therefor; and the case shall be brought to as speedy a trial as consistent with a proper preparation for trial, and all proceedings expedited so far as proper and consistent with the circumstances.

"This agreement dates from May 1st, 1903, and the sum of $1,000 now paid to said Wright for services performed prior to such date.

"The foregoing monthly payments are in full of all demands for any services rendered by said Wright to

the heirs of Jonathan Clark, except in the event of a settlement made with the approval of all concerned, or except in the event of a successful issue, whereby the will of Jonathan Clark is permanently set aside, in either of which events the compensation shall be such additional sum as Mr. Shea Smith, Mr. George Clark and Mr. Fred Clark, or any two of them, shall agree upon.

"Dated Chicago, Illinois, June 17th, 1903.

(Signed) ARTHUR B. WRIGHT,
F. W. CLARK,
GEORGE T. CLARK,
SHEA SMITH."

The judgment appealed from was for $15,000 against George T. Clark, who, at the time of its entry, was the only surviving party to said agreement other than appellee. Since this appeal he, too, has died, and substitution has been duly made.

The litigation referred to in said agreement extended in one form or another from May, 1903, until January, 1909, when a satisfactory settlement was reached. No question arises under said agreement except as to the additional compensation therein provided for. Two months after said settlement, Smith being then dead, the two Clarks designated in the agreement met and agreed upon the sum of $2,500, which appellee declined to accept, and which appellant, on the theory of an appraisement, contends is the utmost that could be recovered. While we share his view that, under the contract and circumstances, their action constituted an appraisement, the point does not enter into our conclusion, as on this record we think no sum whatever can be recovered.

Appellant pleaded in bar of any recovery instances of professional misconduct by which appellee forfeited further compensation, and urges that on grounds of public policy the defense cannot be waived. While the case went to the jury on at least one instruction based on that rule of law, appellant strongly insists that ap-

plication of the rule to undisputed facts required granting his motion for a directed verdict, and calls for reversal of the judgment. On the other hand, appellee contends not only that the instances complained of pertained to services and matters not inconsistent with his duties and obligations under the contract under which he seeks recovery, but that the essential features of misconduct were disputed, thus raising a question of fact and not one of law on which the motion was predicated.

While it may be doubtful whether as to other instances of misconduct relied on the case should have gone to the jury, we think the controlling facts of what is referred to as the "Cox matter" stand uncontroverted and called for application of the rule.

Those facts are as follows: Under the agreement in question appellee was to act for the widow and heirs of Jonathan Clark (of whom George T. and Frederick W. were sons and the wife of Shea Smith, a daughter) either to set aside his will or to effect a settlement of controversies that need not be detailed. The litigation took various forms resulting in a decree of the Circuit Court confirming a compromise settlement, and in proceedings to close the estate in the Probate Court. In all the litigation appellee appeared for and represented the heirs. Testifying to the services he rendered for them in the various courts, including the Probate Court, he said:

"In all this litigation which I have mentioned and in which I took part, the services rendered by me were for the benefit of the heirs of Jonathan Clark, and in pursuance of the contract of June 17, 1903."

There were three executors of Jonathan Clark's will, Edwin F. Bayley, Caroline Patterson and said George T. Clark. Each in course of time had a separate attorney, and the "Mr. Cox" referred to in said agreement became the attorney for George T. Clark as such executor. Early in his negotiations to represent the

heirs, appellee had elicited Cox's services in their behalf and made provision therefor in said agreement, under which both received their respective monthly allowances up to the time of the settlement in January, 1909. By orders of the Probate Court, allowances were made out of the estate for attorney's fees for the executors, of which Cox, as attorney for executor George T. Clark, received $10,500. Out of this sum he gave appellee $8,400, pursuant to appellee's construction of an agreement between them for a division of their compensation. While Cox had a different understanding of that arrangement, claiming it did not extend to services rendered for executor Clark, he yielded to appellee's views, giving him 80 per cent of each allowance received by him as attorney for executor Clark, and presumptively was willing to render such services for 20 per cent of what was allowed. While Cox was brought into the case by appellee and apparently rendered the greater part of the legal services for which he received compensation, and has unreservedly explained the peculiar circumstances that led to his acquiescence in appellee's demands, his position in the matter, though quite different from appellee's, is not in question here, and our views as to the latter's position must not be regarded as a reflection upon Mr. Cox.

This agreement was unknown to the widow or heirs. From certain testimony appellee argues that they or some of them subsequently acquired knowledge of such a division, but the testimony cited obviously refers only to their knowledge of the agreement sued on and the compensation paid pursuant thereto. But, as we view it, knowledge of such arrangement and acquiescence therein would not alter the situation. If it was professional misconduct to arrange for and accept such a division, then on grounds of public policy such misconduct cannot be waived. (*Strong v. International Building, Loan & Investment Union,* 183 Ill. 97.)

It is obvious that the main object of appellee's employment was to procure for his clients as large a portion of said estate as possible, and that his relation to them imposed not only the duty to resist any unjust or excessive allowances out of the same, but to give them the benefit of his best judgment as to the propriety of such allowances, and to refrain from taking any position conflicting with their interests or such employment. But from the foregoing state of facts can it be doubted that he violated these obligations? His arrangement with Cox, as he construed and enforced it, and concealment of the same from his clients, unquestionably placed him where his personal interests were prejudicial to theirs, and thus where he could not give them the impartial judgment to which they were entitled as to the amount and propriety of attorney's fees for executor Clark. It can hardly be doubted that his claim for and insistence upon the right to receive a share of such fees furnished a motive either to acquiesce in any sum that might be asked for attorney's fees, or to attempt to reconcile the relative interests of the executor and his clients as working to a common end. If Cox was willing to take the $2,100 which he retained for his services, how could appellee with knowledge of that fact, consistent with his employment and the interest of his clients, stand by without protest and see an allowance of $10,500 therefor out of the estate? It is significant that he did not disclose such arrangement to his clients. We cannot doubt that his attitude was adverse to their interests, and tantamount to employment on both sides of a controversy. He was as much interested in such allowances for the executor as if personally employed by him to render the services for which the allowances were made.

We need not distinguish the facts in cases where the rule of law invoked has been applied, or go outside of the case of *Strong v. International Building, Loan &*

*Investment Union,* 183 Ill. 97, for the law.   There, as here, it was argued that the interests served by the attorney were not adverse.   The court said:

"But if they were only apparently so from the record of the proceedings, and were in reality, as counsel insist, not so adverse but that counsel could reconcile them in working to one end, yet we are disposed to think that the rule would apply."   (103.)

The court declared that the rule forbidding attorneys at law from accepting employment from adverse litigants at the same time and in the same controversy is a rigid one, and was designed among other purposes "to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent."   (101.)

These words are particularly applicable to the instant case.   Appellee could not consistently have taken fees for such legal services to the executor unless they were absolutely necessary to the interests of said heirs. His position required him to inquire whether they were, and, in any event, good faith towards them required a complete divulgence to each of them of his interest in such fees.   While appellee was not employed by Clark as executor, his position is no different in principle than if he secretly had been.   If he did not, in fact, serve conflicting interests, his bargain with Cox, as he construed it, furnished such a strong motive to reconcile them as to render him unfit to give his clients' interests impartial consideration.

We cannot doubt the applicability of the rule invoked to the undisputed facts of this record as above given, and that a recovery is thereby precluded as a matter of law.

We deem it unnecessary to dilate upon appellee's contention, apparently raised here for the first time,

that the right to his recovery has been previously adjudicated in his favor. Appellant was not a party to the record relied on, and, in our opinion, it contains nothing tending to support the contention.

*Reversed.*