**LEWIS v. CANADIAN PAC. RY. CO. et al.**

No. 4254.

Circuit Court of Appeals, Seventh Circuit.

March 29, 1930.

Rehearing Denied May 28, 1930.

Andrew R. Sherriff, of Chicago, Ill., for appellant.

Edwin H. Cassels, of Chicago, Ill., for appellee Canadian Pac. Ry. Co.

Ellis D. Whipp, of Chicago, Ill., for appellee Mary A. Braun.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The questions presented are:

1. Can appellant, under his contract, join appellee Braun as a party plaintiff in the case below against her will and over her protest?

2. Did the trial judge have the power to review this question inasmuch as it had been decided adversely to appellees by the original trial judge, who was compelled to withdraw from the case on account of illness?

3. If the first question is answered in the negative, may appellant bring this suit and prosecute this appeal in his own name?

4. Were the shares in question effectively vested in the Canadian Custodian of Enemy Property under the consolidated orders respecting trading with the enemy, and the decree of the Superior Court of Quebec pursuant thereto?

5. If so, did such vesting constitute a bar to the alleged right of Lewis and Braun, or either of them, to require a transfer of the shares and the payment of dividends accrued since July, 1914?

The right of appellant to maintain the action in his own name, or jointly with Mary A. Braun, or with her as administratrix of the estate of her deceased husband, depends primarily upon whether or not he has an interest in the subject matter of the action. Equity rule 37 (28 USCA § 723) provides that

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought. All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when any one refuses to join, he may for such reason be made a defendant."

This rule specifically describes who may be plaintiffs, and, unless appellant brings himself within one of these seven descriptions, he has no right to maintain the action either individually or jointly.

It is quite apparent that appellant is not claiming this right by virtue of being executor, administrator, guardian, or a party with whom or in whose name a contract has been made for the benefit of another. He must, therefore, qualify either as a real party in interest, as a trustee of an express trust, or as a party expressly authorized by statute.

Whatever interest appellant has is derived from the two agreements entered into on the respective dates of July 17, 1920, and November 27, 1920. The first agreement merely authorizes Lewis to act as Braun's attorney and representative in the matter of the shares of stock belonging to Braun. The purposes of the agreement are: (1) to have the shares properly transferred to Braun; (2) to have the necessary certificates issued to Braun; (3) to put the property in Braun's name in order that he may have a clear title; (4) to secure for Braun the dividends due on the stock, and to collect such sum as is due him; (5) to bring about the protection of Braun and of his property. To accomplish these purposes Braun authorizes Lewis to take any steps and any course in Braun's name, and to make any demands in his name which in Lewis's judgment is best. Then follows a provision that, in case of Braun's death, Lewis is to take such course and action with the shares and money (1) as Braun's "will would provide"; (2) or as any directions may provide which Braun may give in writing to either his wife or any other person.

Mr. Braun left neither a will nor written directions, which fact, in our opinion, eliminates from our consideration the provision last referred to. Conversely stated, the provision must, we think, be construed to mean that, if Braun left no directions by will or other writing, then there was no authority to act after his death, unless the written agreement conveyed or granted to Lewis some interest in the subject matter. We think it conveyed no such interest. There is no granting or conveying clause, so far as Mr. Lewis is concerned. It is merely a commission and contract for service, and the matter of fees and payment for services of Mr. Lewis was to be arranged at some proper time in the future. This is the identical language used by him in his written acceptance, attached thereto.

Mrs. Braun, in writing, approved the agreement, and to the extent of her own interest authorized Lewis for the same purposes as authorized by her husband. She had no interest whatever in the shares of stock or dividends, and, if the authority granted by her to Lewis is to be measured by her interest therein, she gave none. She at least granted no more authority to Lewis than did her husband, and certainly he did not grant or convey any interest in the subject-matter by the first agreement.

The second agreement states that the matter of fees and payment for services on the total amount recovered up to the sum or value of $65,000 shall be 20 per cent. thereof; and on all recovered in excess of $65,000 it shall be 50 per cent. thereof. Mrs. Braun merely signed an O. K. thereto. This language is certainly not sufficient to create a present interest in Lewis in the stock or dividends. He was to get no part of the stock in his name, for, according to the agreement, it was all to be transferred, and certificates issued, to Braun; likewise the agreement gave him no present interest in the dividends, for it explicitly states that they are to be collected for Braun. Lewis was to receive as a fee and payment for services certain per cents of the value of the property recovered.

There is a vast difference between a mere agency and an agency coupled with an interest. Likewise there is a great difference in interests with which the agency may be coupled. This subject is very thoroughly and clearly discussed in Mechem on Agency, §§ 561 et seq. In section 570 he separates such interests into three classes—(1) interest in the result of the agent's action; (2) interest in the power, or the right to exercise the authority; (3) interest in the subject matter, or the thing itself. The first he classes as agency with mere naked power. This is always revoked by death, and may be revoked by the principal at any time without cause, provided the injury, if any, caused to the agent by such revocation can be measured in damages. As illustrative of this class he cites the agent who is authorized to collect a debt and is to have for his services a commission or a share of what he collects. Section 586. In the second class he places the agent who, by reason of the exercise of his authority, has been placed in a harmful position, and has suffered, or will suffer, injury which cannot be compensated in damages. In such event the agent is said to have an interest in the power or the right to exercise the authority as a means of reimbursement, indemnity, or protection. This sort of agency, says Mr. Mechem, cannot be revoked by the principal, but is always revoked by the principal's death. The test between classes 1 and 2 is whether the agent has some interest to be protected other than his mere employment or the opportunity to exercise the power in order to earn his commission or compensation. Section 578. The third class embraces all agents who have an actual present interest in the subject-matter, and such agencies can be revoked neither by the principal nor death. Section 574.

The analysis and the principles laid down by Mr. Mechem are fully supported by the leading case of Hunt v. Rousmanier, 21 U. S. (8 Wheat.) 173, 203, 5 L. Ed. 589. The phrase "coupled with an interest" sufficient to survive death has never been defined more clearly than by Chief Justice Marshall in that case. He says:

"We hold it to be clear, that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. * * * 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases, when the interest commences, and therefore, cannot * * * be said to be 'coupled' with it."

Appellant cites the case of Spellman v. Bankers' Trust Co., Executor (C. C. A.) 6 F.(2d) 799, 800, in support of the proposi-

tion that, to a suit by an attorney having a contract for a contingent fee to enforce his right against property or a fund, the client is a necessary party. That suit was one by the attorney to establish his fee, in which suit he claimed to be an equitable assignee of a fractional share of the estate. He had contracted with one of the heirs to attack the ancestor's will and to recover the heir's share of the estate, for which the attorney was to receive 50 per cent. of whatever might be recovered in money or in property. He was dismissed by his client, and brought this action, which went to decree, before the action attacking the will was adjusted. His theory was that he had an equitable interest in the funds of the estate in the hands of the executor. The court held that under the contract he was not a legal assignee, and that as an *alleged* equitable assignee he could not maintain the action without his client. Immediately preceding this ruling the court enunciates the following principle of law:

"An agreement to pay a certain sum out of that which one is entitled to receive * * * does not operate as a legal or equitable assignment, since the assignor in either case retains control of the subject-matter."

This principle is supported by the following decisions: Cameron v. Boeger, 200 Ill. 84, 65 N. E. 690, 93 Am. St. Rep. 165; Williams v. Ingersoll, 89 N. Y. 508; Thomas v. New York & G. L. R. Co., 139 N. Y. 163, 34 N. E. 877; Story v. Hull, 143 Ill. 506, 32 N. E. 265.

It is very clear to our minds that, under the analyses made by Mr. Mechem in his work on Agency, appellant, by virtue of the agreement, falls in class 1, which is an agency with bare power, and may be revoked at will, and is always revoked by the death of the principal.

■■ Appellant contends that he has an equitable interest in the stock and dividends by virtue of the Illinois Statutes (Smith-Hurd Rev. St. 1929), c. 13, § 14, which relates to attorneys' liens. This section has been construed to the effect that the lien does not exist until the prescribed notice is served, and such notice must state the interest the attorney has in the suit or cause of action. Steele v. Lamb, 184 Ill. App. 577. We find nothing in the evidence or in the complaint to show that such notice was given. Even if notice were given, the lien given by the statute is upon only the proceeds of the litigation or settlement of claim. Baker v. Baker, 258 Ill. 418, 101 N. E. 587; Needham v. Voliva, 191 Ill. App. 256. The lien cannot attach until some recovery is had to which it can attach. There is nothing due appellant until a decree of recovery is entered. This is a suit to recover the shares and dividends, and not to enforce a lien upon the recovery. If it were the latter, it would be premature. No authority has permitted an attorney to maintain his client's *chose in action* in his own interest. Spellman v. Bankers' Trust Co., Executor (C. C. A.) 6 F.(2d) 799.

■ It is urged by appellant that a person having possession of certificates of stock under assignment for value received has legal title thereto, which places the burden on the original owner to defeat such legal title; and in support of this proposition he cites Travis v. Knox Terpezone Co., 215 N. Y. 259, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387. This of course is a correct statement of the law. It amounts only to a presumption, and is completely rebutted by the evidence and the allegations of the complaint. Appellant, in fact, was nothing more than a custodian of the certificates at any time, and when the court returned them to him after introduction in evidence, and after photostatic copies were substituted, he was still nothing more than a custodian, and the order of the court added nothing to the strength of his title.

We therefore hold that appellant had no right to maintain this action in his own name, or jointly with Mary A. Braun, or with her as administratrix of the estate of her deceased husband. This being true, it is immaterial, for the purposes of this opinion, whether or not the last trial judge erred in reviewing, and in ruling adversely to, a decision of a former trial judge. If we should reverse for this reason it would be with instructions to enter a decree of dismissal, which that court has already entered.

As to the remaining questions so ably and splendidly presented, it is neither necessary nor proper to consider them, and we intimate no opinion with respect to the relative rights between Lewis and Mary A. Braun and the Jacob G. Braun estate other than the right to maintain this action.

Decree affirmed.