Zoe Seator Price, Plaintiff, v. Gordon T. Seator et al.,
Defendants.
Zoe Seator Price, Appellee, v. Frances E. Spooner,
Appellant.

Gen. No. 44,581.

250

Opinion filed
April 4, 1949. Rehearing denied April 18, 1949. Released for publication May 17, 1949.

OTTO W. BERG, of Chicago, for appellant.

McGOORTY & McGOORTY, of Chicago, for appellee; JOHN P. McGOORTY, JR., of Chicago, of counsel.

Mr. Justice Niemeyer delivered the opinion of the court.

Respondent appeals from an order entered on the petition of plaintiff fixing respondent's fees at $750, extinguishing her attorney's lien on payment of said sum, and taxing against respondent nine-tenths of the costs of the hearing before a special commissioner.

On March 14, 1945, respondent and her associate, James G. Barber, started this suit for partition, accounting and other relief in the name of plaintiff. On May 24, 1945, respondent filed a notice of attorney's lien reciting that petitioner had placed in respondent's hands as her attorney her claim against the principal defendants herein and had agreed to pay a reasonable fee on a percentage basis of not less than $5,000 and one-tenth of the amount recovered by suit, settlement or otherwise. June 28, 1945, petitioner filed her petition reciting that respondent and her associate had filed the complaint herein and made themselves attorneys of record for petitioner without her consent or approval and contrary to her wishes; that beginning on to wit October 24, 1944, respondent had rendered certain legal and professional services in respect to petitioner's property rights and interests for which respondent had been paid $135; that petitioner had expressed to respondent her desire that her matters with her sister and brothers be settled without litigation and that such services as respondent should render to petitioner would be compensated on a time and service basis and not on a percentage or contingent fee; that without the knowledge, consent or approval of petitioner, respondent engaged and associated herself with James G. Barber, an attorney at law, and respondent and Barber, contrary to the wishes and instructions of the petitioner and without her knowledge and consent, filed the complaint herein; that on May 8, 1945, petitioner informed respondent that she did not desire her to render any further services; that she desired re-

spondent to withdraw from this suit, to submit her bill for services rendered and to return certain papers and documents which respondent was holding; that thereafter respondent filed the notice of attorney's lien heretofore mentioned. Petitioner prays that attorney Carl E. Buddenbaum be granted leave to file his appearance as attorney for petitioner, as plaintiff herein, in lieu of respondent and Barber; that a determination be made of the fees and compensation to be paid respondent for services rendered to petitioner; that the notice of attorney's lien be quashed; that respondent be required to deliver to petitioner papers and documents delivered to her by petitioner, and for other and further relief.

Respondent answered averring her employment on a percentage and contingent basis; that suit was instituted on instructions from petitioner's husband, acting under power of attorney from petitioner; that Barber was acting as an employee of respondent, and insisting upon respondent's right to hold documents and papers received from petitioner until her fees and costs are paid in full. Petitioner replied, repeating some of the allegations of the petition, asserting that the power of attorney to her husband was for the sole purpose of permitting him to represent her at a corporation meeting, and that she had no knowledge of the filing of the suit until March 24, 1945.

On October 17, 1945, on motion of petitioner, the cause was referred to Rupert F. Bippus, as special commissioner to take testimony on the matter of the fees of respondent on the issues joined by the petition, answer and reply, and to report his recommendations as to fact and law within 30 days. On April 29, 1946, on motion of all the parties, the cause was rereferred to Bippus as special commissioner to hear, take proofs and report his conclusions of law and fact. Without objection to these references, respondent appeared before the special commissioner and participated in the

hearings before him, cross-examining witnesses called by petitioner, presenting testimony on her own behalf and arguing the cause on the conclusion of the testimony. On completion of the master's report, October 17, 1947, respondent filed special and general objections to the report which were later ordered to stand as exceptions. By her special objection she specifically objected to the report and reference to the commissioner, stating as grounds thereof that the judge of the superior court did not have jurisdiction to appoint a special commissioner to hear any part of the cause or the matter of the fees of respondent; that Rupert F. Bippus was not and is not a master in chancery of the superior court and that the court had no authority to appoint a special commissioner except where there is no master in chancery qualified to act. She asked that the appointment be set aside as null and void. Her general objections were in form the usual objections to findings of fact filed to masters' reports.

On hearing, the exceptions were overruled and an order entered finding that respondent had expressly waived the claim that she was employed on a percentage basis, and rests her claim for additional compensation on a *quantum meruit* basis; that petitioner did not authorize the filing of the complaint herein and respondent is not entitled to compensation for services relating thereto; that petitioner did not authorize the employment of Barber as additional counsel and his services cannot be used as a basis of enlarging respondent's claim against petitioner; that petitioner terminated respondent's employment as her attorney on or about April 30, 1945 and respondent is not entitled to compensation for services rendered thereafter; that in addition to the amount theretofore paid, respondent is entitled to $750 as the fair, reasonable and customary value of authorized services rendered by her to petitioner. It was ordered that petitioner pay to the commissioner $750 in satisfaction of her obligations to

respondent; that upon such payment and the filing of the receipt thereof with the clerk of the court, respondent's attorney's lien be extinguished; that upon such payment respondent deliver to petitioner the documents and papers held by her as security for her fees; that petitioner pay one-tenth of the charges of the commissioner fixed as costs in the amount of $787.40, and respondent pay nine-tenths thereof; that the commissioner apply $708.66 of the amount paid by petitioner to him for respondent toward the obligation of respondent for costs, and pay the balance of $41.34 to respondent.

We must first consider respondent's contention that the reference to the special commissioner was void and the proceedings before him a nullity. Since repeal of section 39 of the Chancery Act by the Civil Practice Act there is no statutory authority for reference to a special commissioner in chancery proceedings, except limited references as to the condition in life of the parties and their circumstances in divorce and separate maintenance suits (sec. 15, Divorce Act, Ill. Rev. Stat. 1947, ch. 40, par. 16 [Jones Ill. Stats. Ann. 109.183]; sec. 1, Separate Maintenance Act, ch. 68, par. 22 [Jones Ill. Stats. Ann. 109.189]), and general references under sec. 20 of the Burnt Records Act (ch. 116, par. 24 [Jones Ill. Stats. Ann. 117.25]). These are special chancery proceedings.

The terms special commissioner and master in chancery have long been used interchangeably. *Farnsworth v. Strasler,* 12 Ill. 482; *White v. Haffaker,* 27 Ill. 349; *Davis v. Davis,* 30 Ill. 180, 184; *Harding v. Handy,* 11 Wheat. (U. S.) 103, 126. Section 20 of the Burnt Records Act, *supra,* the only statutory provision directly authorizing courts to appoint special commissioners, provides that the masters in chancery of the court shall be "ex-officio, such special commissioners, to take evidence and report all such petitions as may

be referred to them.'' Where, as here, the duties imposed on the special commissioner are those pertaining to the duties of a resident master in chancery of the county, as defined by statute (ch. 90, sec. 6 [Jones Ill. Stats. Ann. 106.27]), we hold him to have been appointed as a special master in chancery (*Dean v. Emerson*, 102 Mass. 480), and the right of the court to make the appointment dependent upon its right to appoint a special master in chancery under the statute hereafter noted. The circuit and superior courts of Cook county may ''appoint for their respective courts as many masters in chancery as there are judges thereof.'' Ill. Rev. Stat. 1947, Masters in Chancery, ch. 90, sec. 1 [Jones Ill. Stats. Ann. 106.22]. Section 61 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 185; Jones Ill. Stats. Ann. 104.061] limits references in chancery to these masters. *Simpson v. Harrison*, 328 Ill. App. 425. Under authority of sec. 5 of ch. 90 [Jones Ill. Stats. Ann. 106.26], ''Whenever it shall happen that there is no master in chancery in any county, or when such master shall be of counsel or of kin to either party interested, or otherwise disqualified or unable to act in any suit or matter, the court may appoint a special master to perform the duties of the office in all things concerning such suit or matter; . . . .'' When a court appoints a special master it is presumed that he acted for sufficient reasons. These reasons need not be spread upon the record. *Farnsworth v. Strasler*, 12 Ill. 482, *Armsby v. People ex rel. Paine*, 20 Ill. 155, 159, and *Lubliner v. Yeomans*, 65 Ill. 305. The extreme improbability of the happening of the contingencies necessary to make lawful the appointment of a special master in Cook county does not alter the rule or overcome the presumption of the regularity of the court's action. Having failed to rebut this presumption by showing of record that there were qualified masters in chancery of the superior court to

whom the cause might have been referred, respondent cannot object to the appointment of the special commissioner and the reference to him.

The principal question on this appeal is the reasonable value of the authorized services of respondent. The services of her associate, Barber, are not involved. He has not made any claim in this proceeding against petitioner for services rendered by him. Petitioner asks for no relief as to him. He testified that at a conference a week after the filing of this suit he advised petitioner's husband that his arrangement with respect to fees was with respondent and that he was working for her. Respondent at all times took the position that no one authorized her to employ Barber except herself, and that he was her employee. In the notice of attorney's lien filed by respondent, and throughout the proceedings before the special commissioner, including the disposition of the objections filed by her, respondent based her claim for compensation upon an alleged express agreement to pay her a contingent fee of not less than $5,000, based on "one-tenth of amount recovered by suit, settlement or otherwise." During the pendency of her exceptions to the report of the special commissioner she abandoned her claim of compensation on a percentage basis and, as found by the trial court in the order appealed from, rested "her claim for additional compensation upon a *quantum meruit* basis." She confirms this finding by her statement in this court that "respondent accedes to the theory that she should be paid on a *quantum meruit* basis in as much as the evidence on the contract for fees was so conflicting that it cannot be reasonably contended that there was a meeting of the minds on that score." In the petition filed herein petitioner admitted that respondent was entitled to further compensation on a time and service basis, and the special commissioner and the trial court, finding for petitioner as to the basis of respondent's additional compensation,

fixed the compensation upon a *quantum meruit* basis. Petitioner has acquiesced in this finding and cannot now deny the right of respondent to question the amount fixed by the trial court as the reasonable value of her services. The testimony as to the extent of respondent's employment and her authority, if any, to institute suit is conflicting. Each of the parties to this appeal testified in support of her theory of the case. They were supported by relatives or associates, who were admittedly partisan. The report of the special commissioner having been approved by the chancellor, we cannot disturb the findings of fact unless they are manifestly against the weight of the evidence. *Kane v. Johnson,* 397 Ill. 112; *Pasedach v. Auw,* 364 Ill. 491, 496, 497. Testimony on respondent's behalf is greatly weakened by abandonment of her claim to compensation on a percentage basis, aggressively asserted throughout the proceedings before the special commissioner, and her admission, as heretofore stated, that "the evidence on the contract for fees was so conflicting that it cannot be reasonably contended that there was a meeting of the minds on that score." The testimony in respect to respondent's alleged authority to institute suit is not less conflicting, and a detailed statement of the testimony on this point would not be helpful. The testimony on respondent's behalf is further weakened by the fact that at the several conferences between respondent, her associate and the husband of petitioner, at the office of respondent's associate, the wife of respondent's associate was placed in the position of an eavesdropper behind a board partition extending only part of the way to the ceiling where she claims to have overheard the entire conversations.

There is testimony that immediately upon hearing of the filing of the suit, petitioner through her husband remonstrated with the respondent and asked that the proceedings be withdrawn and was told that this was impossible because the summons had already

been served. Petitioner, who was spending the winter in New Mexico on account of her health, as she had done for a number of years preceding, returned to Chicago within several weeks of the filing of the suit and immediately attempted to obtain a conference with respondent but was unable to do so until April 30. A second conference was had on May 8. At these conferences petitioner claims that she objected to the filing of the suit, to the employment of an additional lawyer by respondent, and suggested the substitution of an attorney for respondent. Some of the testimony of petitioner and her husband is contradicted by respondent and her witnesses, but under the rule heretofore announced we cannot say that the holding of the trial court that the institution of the suit was unauthorized is manifestly against the weight of the evidence. In respect to respondent's contention that petitioner adopted the institution of the suit by respondent, the evidence shows that on the day preceding the filing of the petition now under consideration several of the defendants filed a counterclaim, thereby effectively preventing a dismissal of the suit by plaintiff. Concurrently with the filing of the petition petitioner sought to substitute an attorney for respondent and her associate. The failure of the trial court to permit the substitution, as requested, did not continue or broaden respondent's right to fees. A litigant has the unquestioned right to discharge an attorney at any time, with or without cause, subject only to his obligation to compensate an attorney without fault for services theretofore rendered, either on a *quantum meruit* or according to an express contract, if any, between the parties. As a matter of simple justice, no attorney, whose continuation as such is objected to by the client, should presume to render additional services without express authorization of the client, and if the attorney does render such service he should be denied compensation.

■■ We are therefore brought to a consideration of the reasonableness of the compensation fixed by the court for services of the respondent, exclusive of those rendered in connection with the institution and prosecution of the suit. Respondent kept no record showing the time expended and the particular services rendered. As a witness before the special commissioner she took the position that the time expended was not a satisfactory criterion by which to determine the value of services, and, as she appears to have proceeded on the theory of employment on a percentage basis until after the hearings before the special commissioner were concluded, she may have thought the keeping of a record was unnecessary. The law imposes upon an attorney, as it does on all other persons seeking to recover for services rendered, the duty of affirmatively proving the actual services rendered. There is nothing in the record which permits fixing a greater number than 75 hours as the time spent by respondent on authorized services for petitioner. It may be that the special commissioner and the chancellor acted liberally in favor of respondent. The value of respondent's services was fixed at $10 per hour. For consultations with petitioner at her home and not at respondent's office at the beginning of the relations between petitioner and respondent, respondent charged and received payment at a rate not in excess of $10 per hour. The subsequent services of respondent, exclusive of the preparation and institution of the suit, consisted in the examination of records, conferences to ascertain facts, and examination of the law. There is nothing in the nature of these services to require compensation at a higher rate than that charged by respondent for consultations, and the charges made by respondent were at least an implied representation that future charges for similar services would be at a like rate. Petitioner's husband testified that a week after the institu-

tion of the suit, after a conference with respondent and her associate regarding fees, he communicated with petitioner in New Mexico and pursuant to her request asked respondent for the amount of her fees to that time and was referred by respondent to her associate, who fixed the fees then earned and apparently included the preparation of the complaint and institution of suit at $350. On the hearings before the commissioner this associate, respondent and a lawyer called by her to testify on the question of fees, fixed them at a higher value, but an examination of all the evidence does not justify disturbing the judgment of the trial court in the amount awarded respondent.

The remaining question relates to the fees allowed the special commissioner. These were taxed at $787.40, one-tenth of the amount being taxed against petitioner and nine-tenths against respondent. This allowance is based upon charges made by the commissioner for taking and reporting testimony at the statutory rate—$332.40—and a time charge of 45¾ hours at $10 per hour, or $455. Included in the latter item is 33¾ hours for "setting of cause for hearings and holding hearings." In so far as this includes hearings on the taking of testimony it is a duplication of the statutory charge allowed for that work and the item cannot be allowed. *Jay-Bee Realty Corp. v. Agricultural Ins. Co.*, 320 Ill. App. 310, 331. In addition the commissioner was allowed one hour for obtaining files, docketing cause and examination of pleadings, one hour for court attendance for an unstated purpose, one hour for meeting and conferences with attorneys and one hour for hearing motions, setting and resetting matters. None of these items is properly allowable. (Ill. Rev. Stat. 1947, ch. 53, par. 38, sec. 20 [Jones Ill. Stats. Ann. 48.020].) The item of eight hours for examining testimony and reporting the commissioner's findings is allowable. These fees therefore should be retaxed at not to exceed $412.40. Complaint is made because nine-

tenths of these fees are taxed against respondent. There is nothing in the record to indicate the reasons prompting this division of the costs. Respondent's insistence upon compensation of not less than $5,000, based on a percentage basis of 10 per cent of the amount recovered, abandoned by her in the trial court, caused the unnecessary production of a great amount of testimony, with the expense incident thereto, before the commissioner. Respondent's ultimate recovery was about one-seventh of the minimum fee claimed by her and about one-tenth of the full amount claimed on a *quantum meruit* in the trial court. The allowance of costs and the proportioning of same between the parties to the litigation are largely matters resting in the discretion of the chancellor. We cannot say that this discretion was abused in this case.

The order appealed from is affirmed, with the exception of the amount allowed to the special commissioner and taxed as costs. As to this item the cause is remanded with directions to fix the commissioner's fees in accordance with the views herein expressed.

*Order affirmed except as to amount allowed special commissioner and taxed as costs, as to which the cause is remanded with directions.*

FEINBERG, P. J., and TUOHY, J., concur.