Margaret de KORWIN, etc., Plaintiff,

v.

The FIRST NATIONAL BANK OF CHICAGO, etc., et al., Defendants.

Thomas Dodd HEALY, Petitioner,

v.

Charles R. AIKEN, Respondent.

No. 43 C 1043.

United States District Court
N. D. Illinois, E. D.

Aug. 23, 1957.

Edward Atlas, Chicago, Ill., for petitioner.

Charles Rivers Aiken, Chicago, Ill., per se.

Wilson & McIlvaine, Chicago, Ill., for trustee.

IGOE, District Judge.

This is an intervening petition filed upon leave for the establishment and allowance of an attorney's fee out of the fund in court in this cause. A summary of the court's jurisdiction in this proceeding over the trust estates of Otto Young, deceased, the fund involved, appears in De Korwin v. First National Bank of Chicago, D.C., 136 F.Supp. 720, at pages 721–722.

The fee sought to be established here by Thomas Dodd Healy, the intervenor, is a percentage or fractional share in the compensation payable to Charles R. Aiken, the respondent, for his services as attorney for the plaintiff, Margaret de Korwin. The basis for intervenor's claim to a divisional interest in the respondent's fees as plaintiff's attorney is a written agreement executed between them as of November 4, 1943, providing that they shall be associated together as co-counsel for the plaintiff in this cause, and an assignment from respondent to intervenor given December 17, 1952, as a part of their fee-sharing arrangement, or as alleged by the intervenor "to effectuate said agreement dated November 4, 1943".

Intervention was allowed herein by order entered February 15, 1957, instructing the trustee "to segregate and withhold from payment or disbursement to Charles R. Aiken one-half (½), or fifty per cent (50%), of the fees heretofore awarded and allowed to him as plaintiff's counsel", and granting "the application of Thomas Dodd Healy to

intervene herein for the special and limited purpose of asserting his claim, * * * arising by virtue of a contract or contracts with Charles R. Aiken or by virtue of assignments from the said Charles R. Aiken, to the fund or funds after their segregation as provided". The issues to be determined in this proceeding were settled by the order of intervention as being those made up by the intervening petition and answer, "including particularly the various questions raised between Thomas Dodd Healy and Charles R. Aiken concerning their relative rights and obligations arising out of the various contracts and assignments involved herein and their actions with respect to the alleged rescission and revocation of such instruments and the legal effect thereof".

By his petition intervenor pleads the contract entered into as of November 4, 1943, between him and respondent providing for their association as co-counsel for the plaintiff, and alleges that "pursuant" to such agreement he "participated with said Charles R. Aiken in the prosecution and disposition of the issues in this cause"; also that "pursuant" to his contract with respondent intervenor was employed and "became attorney of record for said Evelyn Heyworth Stamm and Ruth Young, and has represented them in all matters herein up to the present time". Intervenor further pleads entry of the proportional contributions decree herein on December 2, 1952, awarding respondent twenty-five per cent of certain vested remainders in the Otto Young trust "as a fair, reasonable and just fee for his services rendered as plaintiff's counsel * * * which fee for such special benefits shall be paid to said Charles R. Aiken * * * prior to any distribution * * * made at the termination of the trust", and alleges "that to effectuate said agreement dated November 4, 1943, said Charles R. Aiken executed and delivered to (intervenor) an assignment dated December 17, 1952", and attaches such assignment as an exhibit together with a subassignment not material to this controversy. Intervenor concludes his petition with the claim that under the several contracts and assignments he "is now the owner of and entitled to receive" thirty per cent "of the entire rights or interest of said Charles R. Aiken to said de Korwin Fee * * * and under said Proportional Contribution Decree", and fifty per cent "of any and all other fees to which said Charles R. Aiken is or may become entitled to or which he may receive from representations of other parties to the above entitled cause."

By his answer respondent admits execution of the contracts and employment of intervenor under them, as well as the assignment in furtherance of the fee arrangements between them for intervenor's compensation in representing the plaintiff and the other beneficiaries, but charges that prior to termination of the trust, on August 17, 1956, and before beginning actual prosecution of the fiduciary accounting which constitutes the principal purpose of this suit, the intervenor was discharged for cause as attorney for Mrs. de Korwin and for Mrs. Young and Mrs. Stamm and his retainer contract rescinded, and the implemental assignment revoked, on the grounds that intervenor had taken positions adverse, hostile and antagonistic to Mrs. de Korwin in this litigation and had acted detrimentally to Mrs. Young and Mrs. Stamm, contrary to their best interests and in violation of their wishes and specific instructions. In support of his charges respondent attached as exhibits numerous photostatic copies of documents and a chain of correspondence between the parties bearing upon the transactions involved. Respondent states in his answer that "Thomas Dodd Healy has no present and subsisting right, title or interest in the fund in this court in this cause * * * and that such application should be denied except as to a lesser claim embodied therein for the fair and reasonable value of services conferred", and prays that the intervenor's fee be determined "as on a quantum meruit, less all amounts which have been received by him from time to time on account of such legal

services, or subject to his being surcharged therefor, and that respondent may have a full accounting in this connection from the (intervenor) of all such fee transactions, payments, credits and deposits."

In this state of the record intervenor has moved for judgment on the pleadings and, alternatively, for a summary judgment in apparent recognition of the requirement under Fed.Rules Civ.Proc., rule 12(c), 28 U.S.C.A., that his original motion must be so treated and disposed of. The respondent has made a counter motion for summary judgment in his favor as to all or part of the intervenor's claim against him.

The theory of intervenor's motion is that respondent by his answer set forth no defense to the claim made against him. Respondent's theory is that the actions of intervenor as shown by certain pleadings filed by him herein and by his written admissions uncontroverted in this record bar his fee demands.

The only questions thus requiring determination for disposition of these motions are: did the parties have a right to dismiss intervenor as their legal representative, and if so what may he recover as his compensation? In this connection but three of the admitted communications between intervenor and respondents need be noticed.

With reference to a petition for trust income filed in this cause on behalf of another beneficiary, which Margaret de Korwin, the plaintiff, had adopted and from which she ultimately benefited, intervenor advised respondent in writing on July 5, 1956, to the following effect:

"This will be your notice that I waive any interest in the fee, if any, which you might receive arising out of the so-called Kaufman Petition. This I do because, *despite the terms of our written agreement,* I do not wish to share in a fee based on *a position which I am opposing.*"

In reply, respondent notified intervenor by registered mail on July 31, 1956, pertinently to this controversy:

"I assume by 'our written agreement' you are referring to that memorandum executed by you and me as of November 4, 1943, providing for our association as co-counsel for the plaintiff in cause No. 43C1043, deKorwin v. First National Bank, et al., under which you have received more than $150,000 for services rendered the plaintiff to date. * * * Your actions in signing and filing the amended answer of Ruth Young and Evelyn Heyworth Stamm to the petition of Graveraet Kaufman, in which Margaret deKorwin has joined, reversing your original position on the issues, * * * constitute substantial and flagrant breaches of your retainer contract for the plaintiff, and without more have worked a forfeiture of your right to receive additional compensation under our written agreement.

"Accordingly, you are hereby notified that I have elected to treat your representation of interests adversely to Margaret deKorwin and your persistence in such opposition to her, on behalf of Ruth Young and Evelyn Heyworth Stamm, just outlined, as repudiation of our agreement to act as co-counsel for the plaintiff and to share in fees awarded for such representation, and that I have rescinded such retainer contract. Also, upon the same grounds, I hereby formally disaffirm, cancel, nullify and revoke the instrument signed by me on December 17, 1952, * * * pursuant to the aforesaid memorandum agreement entered into as of November 4, 1943. * * *

"You are further advised in this connection that at the earliest opportunity an application to the court will be made on behalf of the plaintiff, Margaret deKorwin, to disqualify you from further acting as attorney for Ruth Young and Evelyn Heyworth Stamm, to strike your appearance in that behalf, and to bar you from continuing to act as counsel in cause No. 43C1043.

"Moreover, since May 18, 1956, it has become increasingly clear that

the positions you have taken from time to time on behalf of Ruth Young and Evelyn Heyworth Stamm are contrary to their best interest pecuniarily and have the effect of exposing them to the danger of an assessment for substantial costs and expenses of the litigation which you seem determined to prolong. Obviously, the program of obstruction you are presently pursuing in their names is for certain ulterior purposes of your own which will be made to appear, and not for any benefit to Mrs. Young and Mrs. Stamm, but to their detriment. * * *

"Therefore, you are hereby notified that by reason of your improper and dishonest representation of Ruth Young and Evelyn Heyworth Stamm, as hereinbefore set forth, you are to cease and desist acting in any way as attorney for said parties, and upon the stated grounds I disclaim any liability to you or your assistants for compensation, under the terms of the aforesaid contracts."

Intervenor then made the following response in pertinent part, with emphasis supplied:

"Answering your letter of July 31, 1956, preliminarily, I want to advise you that on behalf of my clients, Mrs. Stamm and Mrs. Young, *I have opposed and will continue to oppose* the Graveraet Kaufman Petition. * * *

"In my humble opinion, no attorney could properly represent Graveraet Kaufman on the one hand, and Mrs. Stamm and Mrs. Young on the other, to say nothing of Margaret DeKorwin, as *their interests are adverse.* * * *

"However, when you undertook to represent Graveraet Kaufman, *whose interests are opposed* to Mrs. Stamm and Mrs. Young, each of them notified you in writing last December that I was their sole attorney in this matter. They have also so advised me in writing.

"Accordingly, since *the law is that a client may discharge an attorney at any time,* whatever rights or authority you may have had under said contract to engage counsel *has been terminated* by the written notices of Mrs. Stamm and Mrs. Young. Further, *I was never engaged by you on their behalf, but I was employed by them originally* as above stated and I have acted throughout at their direction and in their interest and never under your direction. * * *

"With respect to Margaret de-Korwin, *I was never aware that I acted as co-counsel for her and I have certainly never appeared or acted on her behalf in these proceedings.* Therefore, I am at a loss to understand why you have written me with respect to Mrs. DeKorwin. * * *

"Further answering your letter, I deny that you have the right to cancel or revoke your instrument of assignment dated December 17, 1952 *insofar as it applies to my interest in the so-called 'proportionate contribution fee'* assessed against my clients' share of the Otto Young corpus, *for work long since performed by you, Homer Carey and me.*

"If you choose to bring an accounting suit, I shall be happy to go into the whole matter."

■ It is elementary doctrine, as noted in intervenor's letter, that a client has an absolute and unconditional right to discharge his attorney at any time. The rule is stated in Illinois Law and Practice (vol. 4, Attorneys and Counselors, sec. 53, pp. 58–59):

"An attorney can be discharged at any time at the will or election of the client, with or without cause, and regardless of any previous arrangement between them. The questions of valid cause for the discharge goes only to the right of the

attorney to compensation, that is, an attorney who is without fault can nevertheless be discharged, subject only to the client's obligation to compensate the attorney for services theretofore rendered, either on a quantum meruit or according to an express contract, if any, between the parties." Citing Pressney v. Pressney, 339 Ill.App. 371, 90 N.E.2d 119; Paul v. Shukes, 323 Ill.App. 527, 56 N.E.2d 141; Goldberg v. Perlmutter, 308 Ill.App. 84, 31 N.E.2d 333; Price v. Seator, 337 Ill.App. 248, 85 N.E.2d 848; Stone v. Baldwin, 331 Ill.App. 421, 73 N.E.2d 635; Conlon v. Sullivan, 280 Ill.App. 332; Regan v. Chicago, M. & St. P. Ry. Co., 204 Ill.App. 115; Sewell v. Sewell, 319 Ill.App. 640, 49 N.E.2d 806.

In 7 C.J.S. Attorney and Client, § 109, pp. 940–941, the textwriter defines the rule thusly:

"Because of the peculiar nature of the relation of attorney and client, the law goes even further and permits the termination thereof in a manner not recognized with respect to other contracts. Either party may dissolve the relation for cause; and the client has the absolute right to discharge the attorney and terminate the relation at any time even without cause, no matter how arbitrary his action may seem, although the question of whether the revocation or termination was with or without cause may have a material bearing on the client's liability for fees." Citing Woodbury v. Andrew Jergens Co., 2 Cir., 69 F.2d 49; Central Loan Co. v. Russell, 5 Cir., 16 F.2d 35; Lewis v. Canadian Pac. Ry. Co., 7 Cir., 39 F.2d 834; United States v. McMurtry, D.C., 24 F.2d 145; Flagler v. Spellman, 2 Cir., 15 F.2d 292; Conlan v. Sullivan, 280 Ill.App. 332; In re McCrory Stores Corporation, 2 Cir., 91 F.2d 947; Doggett v. Deauville Corp., 5 Cir., 148 F.2d 881; Paul v. Shukes, 323 Ill.App. 527, 56 N.E.2d 141; Stone v. Baldwin, 331 Ill.App. 421, 73 N.E.

2d 635; Price v. Seator, 337 Ill.App. 248, 85 N.E.2d 848; Pressney v. Pressney, 339 Ill.App. 371, 90 N.E. 2d 119.

In a footnote to the text this statement appears (p. 941):

"The relation between attorney and client is such that the client is justified in seeking to dissolve that relation whenever he ceases to have absolute confidence in either the integrity, the judgment, or the capacity of the attorney." Citing Conlan v. Sullivan, 280 Ill.App. 332.

This adjunct to the basic rule is set out in the same text (p. 942):

"The right or power of a client to discharge an attorney or revoke his authority is not affected by the fact that the contract of employment provides for the payment of a contingent fee, or expressly provides that it is one coupled with an interest in the subject matter or shall be irrevocable."

And section 169 contains this corollary (7 C.J.S. Attorney and Client p. 1031):

"Where the attorney has been retained on a specific contract and is discharged for good and justifiable cause, the prevailing rule is that he may not recover compensation either in an action on the contract or on a quantum meruit, although it has been held that a recovery may be had on a quantum meruit." Citing In re Badger, 2 Cir., 9 F.2d 560; Fletcher v. Kellogg, 55 App.D.C. 351, 6 F.2d 476, 40 A.L.R. 1525.

Applying squarely to the immediate questions is a further subsidiary rule appearing in Illinois Law and Practice (vol. 4, Attorneys and Counselors, sec. 85, p. 103):

"Attorneys are prohibited from representing adverse litigants at the same time, and an attorney may not recover for legal services where he has represented adverse, conflicting and antagonistic interests in the same litigation." Citing Strong v.

International etc. Union, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792; Beerly v. Wm. Meyer Co., 332 Ill. App. 653, 75 N.E.2d 783; Miller v. Lloyd, 191 Ill.App. 230; Wright v. Clark, 212 Ill.App. 289.

That the Federal rule is the same if not stronger than the Illinois doctrine is made clear by a number of decisions. Woods v. City Nat. Bank & T. Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820; Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243; Silbiger v. Prudence Bonds Corporation, 2 Cir., 180 F.2d 917; Crites, Inc., v. Prudential Ins. Co., 6 Cir., 134 F.2d 925; United States v. Bishop, 6 Cir., 90 F.2d 65; Gesellschaft Fur Drahtlose Telegraphic M. B. H. v. Brown, 64 App.D.C. 357, 78 F.2d 410; Brown v. Miller, 52 App.D.C. 330, 286 F. 994. In the Gesellschaft case, the court said (78 F.2d at page 412):

> "Plaintiff's claim for attorneys' fees is void and unenforceable, since it is in conflict with the well-established rule of public policy that where an attorney has acted for a client he cannot thereafter assume a position hostile to the client concerning the same matter."

In the Crites case, the court said (134 F.2d at page 928):

> "It is true that the [appellant] has little ground for complaint at this divided allegiance. * * * The importance of this issue, however, transcends the interests of the appellant. It is a circumstance of which a court of equity must take cognizance and may not condone. In Weil v. Neary, 278 U.S. 160, 49 S. Ct. 144, 73 L.Ed. 243, the Supreme Court held such fee-splitting contracts as was here made, illegal and unenforceable, and in Woods v. City Nat'l Bank, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820, the court denied all compensation except for necessary expenditures actually made to the benefit of the estates where attorneys had dual interests similar to those here involved."

In the Woods case, the court said (312 U.S. at page 268, 61 S.Ct. at page 497):

> "Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation."

 Accordingly, the motions by intervenor for a full enforcement of his employment contract and the assignment in pursuance of it must be denied. The countermotion by respondent for a summary judgment in his favor upon the whole case involved in the intervening petition will be denied, and respondent's alternative application under Rule 56(d) for an order specifying that the facts set forth in his motion for summary judgment appear without substantial controversy, and directing a determination of the fair and reasonable value of the legal services rendered by intervenor prior to the termination of his retainer for the plaintiff, Margaret de Korwin, and for Ruth Young and Evelyn Heyworth Stamm, as on a quantum meruit, less all amounts shown upon a full accounting to have been received by intervenor from time to time in that behalf, will be allowed.